IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JORDAN BROOKS BRENNER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.  19-487 C |

## COMPLAINT

Plaintiff, Jordan Brooks Brenner, through counsel, alleges as follows:

1. Plaintiff, Jordan Brooks Brenner, brings this action for monetary damages and correction of military records.

2. Defendant has wrongfully discharged Plaintiff from active duty service based on a personality disorder not otherwise specified which Plaintiff does not have.

3. The Air Force Discharge Review Board found sufficient evidence to change the reason for the discharge and it concluded that Plaintiff's discharge was inconsistent with the procedural and substantive requirements of the discharge regulation and Plaintiff was not provided full due process. (Exhibit 1)

### I.  INTRODUCTION

1. Plaintiff, Jordan Brooks Brenner, a former Airmen, files this complaint pursuant to the Rules of the United States Court of Federal Claims. Rule 7(a)(1) (July 2, 2018).

2. Plaintiff respectfully requests that his military records be corrected to show that he was not discharged on May 1, 2014, but continued to serve without interruption on active duty service until the end of his enlistment contract.

3. The Defendant's actions violate the Military Pay Act, 37 U.S.C. § 204 ("Act"), the Department of Defense Directive 1332.14, and the Air Force Instruction 36-3208.

4. As relief, Plaintiff respectfully requests military back pay and benefits, monetary damages, correction of military records in accordance with the applicable laws and regulations, and reasonable incurred attorney's fees.

## II.  JURISDICTION

5. The U. S. Court of Federal Claims has jurisdiction to hear "any claim against the United States found either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012).

6. The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

7. The Military Pay Act confers on Plaintiff the right to the pay of the rank he was appointed to up until Plaintiff has been properly separated from his service. *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) *citing Sanders v. United States*, 594 F.2d 804, 810 (Fed. Cir. 1979).

8. When a service member is involuntarily separated, the Defendant's obligation to continue to pay him or her is extinguished only if the separation is proper. *Rebosky v. United States*, 60 Fed. Cl 305, 310 (Fed. Cir. 2004).

9. If a service member's involuntary discharge is improper, then his or her statutory right to pay continues. *Cameron v. United States*, 34 Fed. Cl. 422, 426-427 (Fed. Cir. 1995).

10. Accordingly, the Act allows the U.S. Court of Federal Claims to hear a suit when the military violates its own laws and regulations and denies military pay.

11. Here, Plaintiff seeks relief because he asserts that he has been improperly discharged.

12. Claims for back pay based on the Act are within the jurisdiction of this Court. *Straughter v. United States*, 120 Fed. Cl. 119, 123 (Fed. Cir. 2015).

13. In addition, the U.S. Court of Federal Claims has jurisdiction to order the correction of military records "as an incident of and collateral to" an award of monetary damages. See *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir 1988).

14. Here, incorrect military records denied Plaintiff his military pay, led to his discharge in violation of the applicable laws and regulations, and the Air Force Discharge Review Board failed to correct Plaintiff's re-enlistment code. (Exhibit 1)

15. All claims filed pursuant to the Tucker Act are subject to a six-year statute of limitations.

### III.  PARTIES

16. Plaintiff, Jordan Brooks Brenner, is a wrongfully discharged Airman with less then one year of active duty service in the U.S. Air Force.

17. He currently lives in Apple Creek, Ohio. He sues in his own right.

18. The United States is the Defendant because the Department of the Air Force is a military department of the Department of Defense under 10 U.S.C. §101(a)(7), and the Department of Defense is an executive department of the United States under 5 U.S.C. § 101.

### IV.  STATEMENT OF FACTUAL ASSERTIONS

**IV.A. Military Service From May 7, 2013 to May 1, 2014**

19. On February 4, 2013, Plaintiff enlisted in the U.S. Air Force Reserve's Delayed Entry Program for four years.

20. On May 7, 2013, Plaintiff was discharged from the Delayed Entry Program.

21. On the same day, Plaintiff enlisted in the U.S. Air Force for six years.

22. Plaintiff began his active duty service in the rank of Airman Basic, pay grade E-1.

23. Plaintiff was twenty years old at the time.

24. In July 2013, Plaintiff successfully completed the U.S. Air Force basic military training at Lackland Air Force Base in Texas.

25. On August 2, 2013, Plaintiff was promoted to the rank of Airman First Class, pay grade E-3.

26. In September 2013, he completed the U.S. Air Force Information Technology fundamentals training and received his Information Technology certificate.

27. Plaintiff found the training challenging at times because of the immature behavior of several other Airmen who were younger than him.

28. In late 2013, Defendant granted Plaintiff's medical waiver after Plaintiff reported that he received medication for mental health issues due to bullying and social isolation before joining the U.S. Air Force.

29. In early 2014, he completed the U.S. Air Force Client Systems training at Keesler Air Force Base in Missouri.

30. Plaintiff received an A+ apprentice certification after completing this training.

31. On February 22, 2014, Plaintiff was assigned to 509th Communications Squadron at Whiteman Air Force Base in Missouri.

32. During his active duty service in the U.S. Air Force, Plaintiff received the following awards: National Defense Service Medal, Global War on Terrorism Service Medal, Air Force Training Ribbon, and an Airman's coin. (Exhibit 2)(Exhibit 3)

**IV.B. Unfavorable Information**

33. On October 30, 2013, Plaintiff receipt a letter of counseling for missing his morning formation and classes.

34. Plaintiff explained that he understood that he was given 72 hours of rest due to being sick.

35. On November 19, 2013, Plaintiff received a letter of reprimand for not following orders and having classroom outbursts.

36. On November 24, 2013, Plaintiff responded that other Airmen disrupted his ability to learn while in the classroom environment, and continued their behavior when he asked them to stop.

37. During his entire active duty service Plaintiff had no record of disciplinary actions.

### IV.C. Medical Issues Concerning Plaintiff's Service

38. On November 18, 2013, Major Bayliss, an Air Force Medical Health Provider, met with Plaintiff after another Airman reported that Plaintiff would hurt himself.

39. Plaintiff strongly denied the allegation.

40. Major Bayliss had no diagnosis concerning any psychiatric issues with Plaintiff.

41. On November 25, 2013, Major Bayliss met with Plaintiff to discuss Plaintiff's stress levels and failing a block test.

42. Major Bayliss did not diagnose with any psychological disorders.

43. On December 3, 2013, Plaintiff met with Major Bayliss again to discuss training stressors and the negative feedback Plaintiff was receiving from others.

44. Major Bayliss indicated that there was no evidence of thought disorder.

45. At some point in early 2014, Defendant directed Plaintiff to undergo a command directed medical evaluation.

46. On March 21, 2014, Plaintiff was screened by the Air Force Web-Based Health Assessment.

47. The assessment did not find any critical or priority issues.

48. On March 26, 2014, Major Merritt, a Board Certified Clinical Psychologist, evaluated Plaintiff.

49. Major Merritt ruled out personality and Asperger's disorders.

50. Major Merritt indicated that Plaintiff completed the Minnesota Multiphasic Personality Inventory II and Millon Clinical Multiaxial Inventory III and that the results were pending.

51. After his evaluation, Major Merritt deferred on his diagnosis for Axis I and Axis II.

52. On March 27, 2014, Major Merritt met with Plaintiff again.

53. After his evaluation, Major Merritt deferred on Axis I and Axis II.

54. On March 31, 2014, Major Merritt met with Plaintiff again.

55. This time Major Merritt diagnosed Plaintiff is a personality disorder, not otherwise specified.

56. Major Merritt advised Plaintiff that if he was not separated for medical reasons, it was likely he would be separated under unfavorable conditions.

57. Plaintiff explained to Major Merritt that he could be an asset to the Air Force.

**IV.D. May 1, 2014 Wrongful Discharge**

58. Based on Major Merritt's recommendation, Defendant began discharging Plaintiff in early April 2014.

59. On April 11, 2014, Plaintiff submitted his written responses asking to be retained in the U.S. Air Force. (Exhibit 3)

60. On April 17, 2014, Defendant prepared an administrative discharge memorandum stating that AFI 36-3208 allowed to discharge Plaintiff because of the personality disorder.

61. On April 18, 2014, Brigadier General Vanherck considered the entire separation packet and directed to discharge Plaintiff.

62. On May 2, 2014, Defendant discharged Plaintiff from active duty service.

63. Plaintiff's certificate of release or discharge from active duty indicated that the narrative reason for separation was "Personality Disorder", separation code was "JFX" and reentry code was "2C." (Exhibit 4)

64. In June 2015, Plaintiff was examined by Kevan McCutcheon, a medical provider from the U.S. Department Veterans Administration.

65. Mr. McCutchen ruled out any personality disorder not otherwise specified.

### IV.E. Air Force Discharge Review Board

66. On March 14, 2016, Plaintiff filed a petition to correct his military records at the U.S. Air Force Discharge Review Board.

67. In his petition, Plaintiff argued that Major Merritt made a material error of fact by diagnosing Plaintiff with a personality disorder.

68. Plaintiff pointed out that his challenges with integrating with other Airmen were caused by their immature behavior which was not conductive to training and team building.

69. Major Merritt incorrectly interpreted this as a sign of a personality disorder and failed to properly assess all of the other evidence.

70. In the petition, Plaintiff argued that he never showed any indication of a personality disorder prior to Major Merritt's assessment.

71. Plaintiff pointed out that his prior medical evaluations showed that he was psychologically sound and did not require any further psychological evaluations.

72. In his petition, Plaintiff also pointed out that in July 2015 he completed a Millon Clinical Multiaxial Inventory III test and had no specific problems or difficulties.

73. Also, Plaintiff stated that the second test – Minnesota Multiphasic Personality Inventory II – showed that he experienced no emotional distress and did not have any issues with his attention or memory.

74. Plaintiff also argued that an independent doctor administered Millon Clinical Multiaxial Inventory III and Minnesota Multiphasic Personality Inventory II to Plaintiff.

75. Based on this, and the Air Force Discharge Review Board's own review of the records, the Board concluded that "the discharge was inconsistent with the procedural and substantive requirements of the discharge regulation." (Exhibit 1)

76. The Board found that Petitioner was not provided full administrative due process.

77. On March 16, 2017, Plaintiff received a new Certificate of Release or Discharge from Active Duty (Exhibit 2)

78. The Board changed the narrative reason for separation but it refused to change the re-enlistment code.

## V.  LEGAL CLAIMS

### Count I

### (violation of 10 U.S.C. § 1169)

79. Plaintiff re-alleges and incorporates by reference the paragraphs set forth above as if each were separately restated here.

80. Section 1169 of Title 10 states that no service member may be discharged before his or her term of service expires unless as prescribed by the Secretary concerned, by a sentence of a general or special court-martial, or as provided by law.

81. Department of Defense Instruction 1332.14, <u>Enlisted Administrative Separations</u> (August

28, 2008) Enclosure 3, section 3a(8)(d), page 12, states that separation for personality disorder "is not appropriate nor should it be pursued when separation is warranted on the basis of unsatisfactory performance or misconduct."

82. The diagnosis must conclude that the disorder is so severe that the member's ability to function effectively in the military environment is significantly impaired. Enclosure 3, section 3a(8)(c)1.a.

83. Prior to an involuntary separation for a personality disorder, documentation must include evidence that the service member was unable to function effectively. Section 3a(8)(f).

84. The instruction explains that separation on the basis of a personality disorder is only authorized if a proper diagnosis is performed in accordance with the established Military Department procedures.

85. In our case, Major Merritt failed to properly assess all of the evidence and to consider the fact that the immature behavior of other Airmen affected Plaintiff's ability to successfully integrate in the unit.

86. Major Merritt ignored the evidence showing that Plaintiff has successfully completed all of his training courses, and received numerous awards.

87. Major Merritt specifically ruled out a personality disorder on March 26, 2014, but only several days later he changed his mind and determined that Plaintiff had a personality disorder.

88. Major Merritt failed to consider the results of the additional tests that Plaintiff took.

89. The additional tests were pending as of March 26, 2014.

90. It also appears that Major Merritt was motivated by his concern that Plaintiff could be separated later under unfavorable conditions – which should have no bearing on his assessment, diagnosis, and recommendation.

91. The Air Force Discharge Review Board reviewed and considered all of the evidence and effectively determined that Major Merritt's diagnosis resulted in incorrect military records.

92. The Board also concluded that Plaintiff was improperly discharged and denied due process. (Exhibit 1)

93. The Board recommended to change Plaintiff's certificate of discharge to show that he had no personality disorder. (Exhibit 2)

94. Based on this, Defendant failed to comply with the federal law and regulations relating to the separation requirements because Defendant diagnosed Plaintiff with a medical condition that Plaintiff did not have, and Defendant used that condition to separate Plaintiff.

95. Because of the incorrect diagnosis, Defendant wrongfully discharged Plaintiff from active duty service in violation of Department of Defense Instruction 1332.14.

96. For this reason, Plaintiff's right to obtain back pay is not extinguished. *Rebosky v. United States*, 60 Fed. Cl 305, 310 (Fed. Cir. 2004)

## Count II

### (violation of Air Force Instruction 36-3208)

97. Plaintiff re-alleges and incorporates by reference the paragraphs set forth above as if each were separately restated here.

98. Air Force Instruction 36-3208, paragraph 5.11.9 explains that a recommendation for mental disorder discharge must be supported by a report of evaluation by a psychiatrist of PhD-level clinical psychologist who confirms the diagnosis and explains that the disorder is so severe that the member's ability to function effectively in the military environment is significantly impaired.

99. In our case, on March 31, 2014, Major Merritt indicated that he diagnosed Plaintiff with a personality disorder based on recently completed psychological testing, a clinical interview and a review of medical records.

100. Major Merritt did not address the results of the Minnesota Multiphasic Personality Inventory II and Millon Clinical Multiaxial Inventory III which were pending as of March 26, 2014.

101. Major Merritt also did not address the fact that Plaintiff has never been diagnosed with a personality disorder before joining the Air Force.

102. Major Merritt also failed to consider that the outbursts could have resulted from other Airmen engaging in disruptive behavior toward Plaintiff.

103. Major Merritt failed to explain why on March 26 he ruled out a personality disorder, on March 27, he deferred any diagnosis on Axis I and Axis II, but on March 31, he determined that Plaintiff had a personality disorder.

104. In 2016, Plaintiff pointed out in this petition to correct military records that the Minnesota Multiphasic Personality Inventory II and Millon Clinical Multiaxial Inventory III which he completed in 2015 showed that he had no personality disorder.

105. The Air Force Discharge Review Board properly considered Plaintiff's medical records, the behavior issues caused by other Airmen, and the 2015 test results and it determined that Plaintiff's records leading to his discharge had to be corrected.

106. Because Defendant violated AFI 36-3208 during the process of separating Plaintiff, Plaintiff should be entitled to proper relief and military pay.

## Count III

### (Abuse of Discretion)

107. Plaintiff re-alleges and incorporates by reference the paragraphs set forth above as if each were separately restated here.

108. Defendant abused its discretion by separating Plaintiff for a medical condition that Plaintiff never had.

109. The evidence showed that a personality disorder was repeatedly and specifically ruled out, Plaintiff never suffered from it, and the issues with other Airmen were caused by them making jokes and disrupting Plaintiff's daily activities.

110. Plaintiff has successfully completed the Air Force Basic Training and Client Services Training and received several awards and decorations. (Exhibit 1)

111. Plaintiff explained that the outbursts were caused by issues with several other Airman disrupting his daily activities and making jokes.

112. Defendant acted arbitrarily, capriciously, contrary to substantial evidence, and in violation of the law because instead of considering all the evidence, and waiting for the results of other tests which were still pending, Defendant summarily discharged Plaintiff for a medical condition that Plaintiff never had.

## VI.  REQUESTED RELIEF

Wherefore, Plaintiff, Jordan Brooks Brenner respectfully requests that this Honorable Court grant the following relief against Defendant:

(1)  that the judgment be entered against Defendant to the maximum amount allowed by law based on the claims asserted in this complaint;

(2)  that the Plaintiff's military records be corrected to show that Plaintiff was not discharged on May 1, 2014, but continued to serve without interruption on active duty;

(3)  that all records inconsistent with the requested relief be destroyed;

(4)  that Plaintiff be allowed such other relief as may be deemed necessary or appropriate in order to accord full, just, and complete relief, and

(5)  that the Plaintiff's earned legal fees and costs expended in pursuit of this complaint be reimbursed.

(6)  All other relief this Honorable Court deems proper.

Respectfully submitted,
s/Wojciech Kornacki
Wojciech Kornacki, Esq. *Of Counsel*
LAW OFFICE OF PHILIP D. CAVE
1318 Princess Street, Ste 200
Alexandria, VA 22314
Tel. 540-270-3041
mljucmj@court-martial.com
Attorney of Record
*Counsel for Plaintiff*

April 1, 2019

Case 1:19-cv-00487-TMD   Document 1   Filed 04/01/19   Page 14 of 15

## **TABLE OF EXHIBITS**

| Number | Document | Description |
|---|---|---|
| 1 | Air Force Discharge Review Board decision | Hearing record and decisional rationale, case number FD-2016-00178, 4 pages |
| 2 | Department of Defense Form 214, Certificate of Discharge | Certificate of Release or Discharge from Active Duty, March 16, 2017, 1 page |
| 3 | Plaintiff's Memorandum | Written Responses to Discharge Notification, 11 April 2014, 2 pages |
| 4 | Department of Defense Form 214, Certificate of Discharge | Certificate of Release or Discharge from Active Duty, May 2, 2014, 1 page |

## **TABLE OF LEGAL AUTHORITIES**

**Source**                                                                                                          **Page**
**Statutory Authorities**

5 U.S.C. § 101……………………………………………………………………………………. 3

10 U.S.C. § 101……………………………………………………………………………...……… 3

10 U.S.C. § 1169…………………………………………………………………………............... 8

28 U.S.C. § 1491(a)(1)……………………………………………………………...………. 2

37 U.S.C. § 204……………………………………………………………………………............ 2

**Legal Decisions**

*Cameron v. United States*, 34 Fed. Cl. 422 (Fed. Cir. 1995)…………………………………….2

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997)…………………………………………... 2

*Rebosky v. United States*, 60 Fed. Cl. 305 (Fed. Cir. 2004)………………………………….2, 10

*Sanders v. United States*, 594 F.2d 804 (Fed. Cir. 1979) …………………………………….. 2

*Straughter v. United States*, 120 Fed. Cl. 119 (Fed. Cir. 2015)………………………...……………3

*United States v. Mitchell*, 463 U.S. 206 (1983)………………………………………………….. 2

*Voge v. United States*, 844 F.2d 776 (Fed. Cir 1988)……………………………………………. 3

**Regulatory Authorities**

Dep't of Defense Inst'n 1332.14,
      Enlisted Administrative Separations (August 28, 2008) .......................................2, 8, 9, 10

Air Force Instruction 36-3208
      *Administrative Separation of Airmen* (July 9, 2004) …...……………...………2, 6, 10, 12