No. 19-487C
(Judge Meriweather)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

JORDAN BROOKS BRENNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

DEBORA A. BYNUM
Assistant Director

OF COUNSEL:

AARON E. ALLARD
Litigation Attorney
Military Personnel Law and Litigation Branch
The Judge Advocate General's Corps
Department of the Air Force
Joint Base Andrews, Maryland

JOSHUA A. MANDLEBAUM
Senior Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-5409
joshua.a.mandlebaum@usdoj.gov

December 22, 2025                    Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT .................................................................................................................... 1

I.    Errors Do Not Void A Discharge If They Did Not "Substantially Affect" The
      Decision, And Judicial Review Is Appropriate Only If A Discharge Exceeded
      Statutory Authority, Did Not Comply With Regulations, Or Violated Minimum
      Concepts Of Basic Fairness ................................................................................ 1

II.   Mr. Brenner's Discharge Was Within Statutory Authority, Complied With
      Regulations, And Did Not Violate Minimum Concepts Of Basic Fairness ............. 2

III.  The Only Possible Error Here Was Harmless, And Has Already Been Corrected ... 3

IV.   *Egan* and *Russell* Are Readily Distinguishable ........................................................ 8

      A.   *Egan* Is Distinguishable Because The BCNR *Agreed* With Plaintiff, And
           Because Plaintiff *Was* Able To Serve During The Period For Which He
           Sought Back-Pay ........................................................................................ 8

      B.   *Russell* Is Distinguishable And Inapposite For Many Reasons ....................... 10

V.    We Are Unaware Of A Similar Case In Which A Court Granted Relief ................. 13

CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

Cases

*Anderson v. United States*,
    59 Fed. Cl. 451 (2004) ........................................................................... 10

*Anderson v. United States*,
    111 Fed. Cl. 572 (2013) ........................................................................... 2

*Betts v. United States*,
    145 Ct. Cl. 530 (1959) ........................................................................ 13, 14

*Brigante v. United States*,
    35 Fed. Cl. 526 (1996) ............................................................................. 2

*Christian v. United States*,
    337 F.3d 1338 (Fed. Cir. 2003) ..................................................... *passim*

*Dillard v. United States*,
    165 Fed. Cl. 214 (2023) ........................................................................... 2

*Doyon v. United States*,
    58 F.4th 1235 (2023) .............................................................................. 15

*Egan v. United States*,
    141 Ct. Cl. 1 (1958) ....................................................................... 8, 9, 10

*Friedman v. United States*,
    310 F.2d 381 (Ct. Cl. 1962) ................................................................... 12

*Gay v. United States*,
    93 Fed. Cl. 681 (2010) ............................................................................. 6

*Glomski v. United States*,
    174 Fed. Cl. 579 (2025) ........................................................................... 2

*Gonzales v. United States*,
    160 Fed. Cl. 172 (2022) .................................................................. 6, 7, 8

*Graves v. United States*,
    176 Ct. Cl. 68 (1966) ............................................................................. 10

*Grooms v. United States*,
    113 Fed. Cl. 651 (2013) ......................................................................... 10

*Groves v. United States*,
    47 F.3d 1140 (Fed. Cir. 1995) ................................................................... 10

*Heisig v. United States*,
    719 F.2d 1153 (Fed. Cir. 1983) ................................................................. 13

*Lowry v. United States*,
    153 Fed. Cl. 300 (2021), *order vacated in part*, No. 20-682C,
    2021 WL 4888874 (Fed. Cl. Oct. 19, 2021) ....................................... 14, 15

*Lyon v. United States*,
    161 Fed. Cl. 88 (2022) .............................................................................. 10

*Malcolm v. United States*,
    No. 20-505C, 2022 WL 4592894 n.3 (Fed. Cl. Sept. 30, 2022) .................. 6

*Marshall v. United States*,
    164 Fed. Cl. 580 (2023) .............................................................................. 2

*Osburn v. United States*,
    171 Fed. Cl. 38 (2024) ............................................................................ 7, 8

*Russell v. United States*,
    183 Ct. Cl. 802 (1968) .................................................................... *passim*

*Sawyer v. United States*,
    930 F.2d 1577 (Fed. Cir. 1991) ................................................................. 13

*Strahler v. United States*,
    158 Fed. Cl. 584 (2022) ............................................................................ 13

*Sullivan v. United States*,
    No. 18-1862C, 2022 WL 1184045 (Fed. Cl. Apr. 21, 2022) ....................... 2

*Summit Contractors v. United States*,
    15 Cl. Ct. 806 (1988) ................................................................................. 6

*Taylor v. United States*,
    22 Cl. Ct. 335 (1991) .................................................................................

*Wagner v. United States*,
    365 F.3d 1358 (Fed. Cir. 2004) .................................................................. 2

*Waller v. United States*,
    461 F.2d 1273 (Ct. Cl. 1972) ..................................................................... 2

iii

*Williams v. Roth*,
  No. 8:21-CV-02135-PX, 2022 WL 4134316 (D. Md. Sept. 12, 2022) ................................... 13


<u>Statutes</u>

5 U.S.C. § 706(2) .......................................................................................................... 2

10 U.S.C. § 1552(c)(1).................................................................................................. 6

10 U.S.C. § 1552(h) ..................................................................................................... 15

10 U.S.C. § 1553 .......................................................................................................... 6


<u>Other Authorities</u>

AFI 36-3208.............................................................................................................. 5, 12

DoDI 1332.28 ............................................................................................................... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JORDAN BROOKS BRENNER,               )
                                     )
            Plaintiff,               )
                                     )      No. 19-487C
        v.                           )      (Judge Meriweather)
                                     )
THE UNITED STATES,                   )
                                     )
            Defendant.               )

<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF</u>

Pursuant to the Court's October 31, 2025 order, ECF No. 60, defendant respectfully

submits this response to plaintiff's November 21, 2025 supplemental brief, ECF No. 61 (Supp.

Br.).

<u>ARGUMENT</u>

I.    Errors Do Not Void A Discharge If They Did Not "Substantially Affect" The Decision,
      And Judicial Review Is Appropriate Only If A Discharge Exceeded Statutory Authority,
      <u>Did Not Comply With Regulations, Or Violated Minimum Concepts Of Basic Fairness</u>

The Court has asked, "[w]hat types of errors, if any, render an honorable discharge void

or improper instead of being curable by correcting other aspects of a servicemember's record?"

ECF No. 60.  The Court has also asked whether any and all errors in a discharge process void the

discharge.  ECF No. 60 (question 2).

Errors can void a discharge only when they "substantially affected the decision to

separate" the servicemember.  *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003)

(citations and quotations omitted).  The plaintiff has the burden to "make a showing that the

defect substantially affected the decision to separate him or relieve him from active duty, or at

least he must set forth enough material to impel the court to direct a further inquiry into the

nexus between the error or injustice and the adverse action."  *Id*.  "If this burden is met, the end-

burden of persuasion falls to the Government to show harmlessness — that, despite the plaintiff's prima facie case, there was no substantial nexus or connection." *Id*.; *see Glomski v. United States*, 174 Fed. Cl. 579, 591 (2025); *Dillard v. United States*, 165 Fed. Cl. 214, 225–26 (2023); *Marshall v. United States*, 164 Fed. Cl. 580, 602–03 (2023); *Sullivan v. United States*, No. 18-1862C, 2022 WL 1184045, at *16 (Fed. Cl. Apr. 21, 2022) (all applying *Christian* to find harmless error in a discharge process); *see also Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) ("[S]trict compliance with procedural requirements is not required where the error is deemed harmless."); 5 U.S.C. § 706(2) ("[D]ue account shall be taken of the rule of prejudicial error.").

Further, "in military discharge cases, judicial review is only appropriate if the [C]ourt finds the military agency acted beyond the applicable statutory authority, ignored procedural regulations, or violated minimum concepts of basic fairness." *Brigante v. United States*, 35 Fed. Cl. 526, 530 (1996); *see also Waller v. United States*, 461 F.2d 1273, 1276 (Ct. Cl. 1972); *Anderson v. United States*, 111 Fed. Cl. 572, 584 (2013), *aff'd* (July 11, 2014); *Taylor v. United States*, 22 Cl. Ct. 335, 339 (1991).

As part of the inquiry into "minimum concepts of basic fairness," the Court considers constitutional rights. *Anderson*, 111 Fed. Cl. at 584. Rights to notice and a hearing pursuant to the Due Process Clause of the Fifth Amendment due not apply to an honorable discharge — even one that contains a bar to reenlistment — because it is not stigmatizing. *Id*. at 588-99.

II.     Mr. Brenner's Discharge Was Within Statutory Authority, Complied With Regulations, And Did Not Violate Minimum Concepts Of Basic Fairness

Judicial review of Mr. Brenner's discharge would be inappropriate here under the standard outlined above, requiring a lack of statutory authority, or a violation of a procedural regulation or "minimum concepts of basic fairness." *E.g.*, *Brigante*, 35 Fed. Cl. at 530. As we

explained in our opening brief, ECF No. 53 at 26 n.11, all administrative procedures were followed here.  Mr. Brenner was entitled to written notice of the recommendation for discharge, to consult counsel, and to submit statements in rebuttal.  Air Force Instruction (AFI) 36-3208, § 6.8, Appx109.  These procedures were followed.  AR 59-61; AR 54; AR 56-57.

Further, Mr. Brenner did not contest the discharge.  AR 57 ("I do request Honorable discharge.").  Moreover, to the extent the initial reference to "personality disorder" on his DD-214 might be deemed stigmatizing, that reference has already been removed.

III.    <u>The Only Possible Error Here Was Harmless, And Has Already Been Corrected</u>

Additionally, the only possible error here was harmless, and has already been corrected. The Air Force Discharge Review Board (DRB) — the same organization that changed the narrative reason for Mr. Brenner's discharge in 2016 — advised the Air Force Board for Correction of Military Records (AFBCMR) in 2020 that Mr. Brenner was appropriately discharged for an unsuiting mental health condition, and no further relief was warranted. AR 97-98.[1]  The DRB explained (in 2020):

> [T]here is sufficient evidence that the applicant had mental health condition/s prior to service and was not aggravated by his time in service.  The administrative procedures at the time of discharge [were] proper, except for the specification of the mental health condition on the applicant's DD 214.  The guidance regarding this was not fully clarified by the DOD until after the discharge was final. . . . due to his documented mental health, his current reenlistment code is appropriate.

AR 98.  While the DRB's 2016 decision did state that Mr. Brenner "did not have . . . any other mental health issues," and was "not provided full administrative due process," the DRB provided no explanation for these conclusory statements at the time.  AR 245.  When disagreeing with its

---

[1] "AR_" refers to the administrative record, ECF No. 48.

2016 statements in 2020, the DRB provided an explanation for them.  The DRB explained that
under current Department of Defense guidance, when an applicant requests changing the
narrative reason for a discharge from personality disorder to secretarial authority, the DRB
should grant the request when there are no aggravating factors in the record.  AR 97.  Thus, the
change to the narrative to "secretarial authority" was not due to an error in discharging
Mr. Brenner for unsuitability due to a mental condition, but rather was equitable relief to avoid
stigmatizing Mr. Brenner with a narrative reason indicating a mental disorder.  *See* AR 245 ("He
also contends that his narrative reason for his discharge has created a stigma whenever he
provides a copy of his DD Form 214.").  The DRB is empowered to grant relief even when there
was no error in a discharge, based solely on equitable considerations.  Department of Defense
Instruction (DoDI) 1332.28, §§ E3.1.6, E4.3.3, Appx715, Appx739.[2]  Relief for equity is distinct
from relief for impropriety, *i.e.*, for errors of fact, law, procedure, or discretion.  *Compare id.*,
§ E4.2, Appx738.  The DRB's earlier 2016 decision did not explain this clearly, but its reasoning
is discernible from the fact that at that time, the DRB declined to remove Mr. Brenner's bar to
reenlistment — evidencing that the DRB believed that Mr. Brenner was, and remained,
unsuitable for service due to a mental health condition.  *See* AR 245 ("However, a change to the
reenlistment code is not warranted.").

      Thus, the only possible error here was in describing Mr. Brenner's unsuiting mental
health condition as "personality disorder" rather than something else.  The mere label given to
his pre-existing, unsuiting mental condition did not "substantially affect" the decision to separate
him.  *See Christian*, 337 F.3d at 1343.  Lt. Col. Rogers's recommendation for the discharge was
based in part on Mr. Brenner's incompatibility with the Air Force, evidenced by his formal

---

[2] "Appx_" refers to the appendix to our cross-motion, ECF No. 53.

counselings and reprimands during a short period.  AR 59.  It is highly unlikely that if another

label had been given to his pre-existing condition at the time, Lt. Col. Rogers would have

overlooked all of Mr. Brenner's difficulties with peer interactions and following instructions, and

opted to retain him.  *See id*.  Further, if Mr. Brenner's pre-existing condition had been labeled

anxiety disorder or pervasive development disorder, the procedures for discharging him on

unsuitability grounds would have been the same.  *See* AR 1025 (medical examiner explaining

that Mr. Brenner had pre-existing mental health conditions of anxiety disorder and pervasive

development disorder and initially received a waiver in order to be retained in the service); Air

Force Instruction (AFI) 36-3208, § 5.11.9, Appx74 (listing "disruptive behavior disorders,"

"adjustment disorders," "impulse control disorders," and "Other disorders, as defined in DSM

that interfere with duty performance or failure to adapt to military environment" as bases for

discharge on unsuitability grounds).

     Mr. Brenner has not even tried to make the required showing that labeling his preexisting

mental condition as "personality disorder" rather than anxiety disorder, development disorder, or

something else "substantially affected" the decision to separate him, and thus has failed to carry

his burden of proof.  *See Christian*, 337 F.3d at 1343.

     He also agreed with the discharge at the time.  AR 57 ("I do request Honorable

discharge.").  Presumably, if he did not contest the discharge when his pre-existing condition

was described as "personality disorder," he would not have contested a discharge for "anxiety

disorder," "pervasive development disorder," or another label for his condition.  It is also

unlikely that the outcome would have changed, if he had contested it.

     To the extent Mr. Brenner contends that the DRB's 2016 statements — which the DRB

itself disavowed in 2020 — are binding on the AFBCMR, he is incorrect.  "[I]t is a well

established principle that an administrative agency may reconsider its own decisions. . . . The legitimate use of the agency's power to reconsider its earlier decision must be respected." *Summit Contractors v. United States*, 15 Cl. Ct. 806, 808 (1988) (citations and quotations omitted)).  Further, only the AFBCMR has authority to recommend back pay or medical retirement.  *Compare* 10 U.S.C. § 1552(c)(1) (authority for correction boards) *with* 10 U.S.C. § 1553 (authority for discharge review boards); *see Gay v. United States*, 93 Fed. Cl. 681, 687 (2010) ("While the ADRB [Army Discharge Review Board] may review the type of discharge given to a service member, it has no jurisdiction to review claims requesting medical disability ratings or pay."); *Malcolm v. United States*, No. 20-505C, 2022 WL 4592894, at *2 n.3 (Fed. Cl. Sept. 30, 2022).

One case that may be helpful on this point is *Gonzales v. United States*, 160 Fed. Cl. 172 (2022), which involved two Army boards expressly disagreeing with each other on the same factual issue.  After an investigation found that Major Gonzales (a lieutenant colonel at the time) had committed misconduct, there were two immediate consequences.  First, Major Gonzales received a severely negative officer evaluation report (OER) finding that he had failed to display the Army value of "integrity."  *Id.* at 175.  Second, a Board of Inquiry (BOI) convened to determine if he should be retained in the Army.  *Id.* at 174.  The BOI determined, by preponderance of the evidence, that Major Gonzales did not commit the misconduct alleged, and should be retained.  *Id.* at 175-76.  Major Gonzales subsequently argued to the Officer Special Review Board (OSRB) that the BOI had "absolved" him of misconduct, which warranted expunging the negative OER.  *Id.* at 174.  The OSRB disagreed, and found that the BOI's findings were *not* supported by a preponderance of the evidence presented to the BOI.  *Id.* at

175-76.  The Board for Correction of Military Records (BCMR) found no error in the OSRB's

decision.  *Id*. at 176.

The Court upheld the BCMR's decision, and rejected Major Gonzales's argument that the

BOI's findings should "supersede and nullify any contrary factual findings by other respective

administrative authorities."  *Id*. at 176.  The Court concluded:

> The journey to this destination entails nothing short of a dizzying
> trip through a labyrinth of administrative procedures.  It might be
> nearly impossible for Army officers to emerge from the lengthy,
> multifarious, and entangling procedures intended to investigate and
> resolve allegations of serious misconduct without, at some point,
> eliciting two inconsistent conclusions from two separate
> authorities.  Such disagreements are part and parcel of a system
> that distributes the power to investigate and discipline military
> members among different boards and bodies to avoid prejudicial
> treatment.  Major Gonzales's insistence that the Board of Inquiry
> and the Officer Special Review Board must march in lockstep
> contravenes the Army regulations' intended separation between the
> two authorities.

*Id*. at 180–81.

Another case that may be helpful is *Osburn v. United States*, 171 Fed. Cl. 38 (2024).  In

*Osburn*, Mr. Osburn was discharged for serious misconduct based on sexual assault, with a

reenlistment code that barred reenlistment.  *Id*. at 41 n.8, 43.  The Coast Guard Board of Review

of Discharge and Dismissals (CGDRB) found the discharge "not equitable," mainly because the

sex acts appeared consensual.  *Id*. at 43.  The CGDRB upgraded Mr. Osburn's characterization

of service, separation code, and reenlistment code, and changed the narrative reason to

"miscellaneous/general reasons."  *Id*. at 43.  Mr. Osburn then sought reinstatement and back pay

from this Court.  *Id*.  The Court granted a voluntary remand to the Board for Correction of

Military Records of the Coast Guard (CGBCMR).  *Id*. at 43-44.  The CGBCMR denied further

relief, and the Court affirmed that decision.  *Id*. at 43-44, 50.

The present case does not involve two military boards disagreeing, but rather, one board (the DRB) correcting the confusing and erroneous statements that it had made earlier. *Compare* AR 245 *with* AR 97-98. Similar to *Gonzales*, the DRB's unexplained, conclusory 2016 statements asserting a lack of due process and a lack of *any* mental health condition — which were inconsistent with the record, and its own decision at the time to retain the reenlistment bar — are not binding on the DRB itself in 2020. Neither did they bind the AFBCMR, or obligate the AFBCMR to award back pay. *See also Osburn*, 171 Fed. Cl. 38.

IV.    *Egan* and *Russell* Are Readily Distinguishable

The Court has asked whether this case is distinguishable from *Egan v. United States*, 141 Ct. Cl. 1 (1958) and *Russell v. United States*, 183 Ct. Cl. 802 (1968). ECF No. 60. Both cases are readily distinguishable, as explained below.

A.    *Egan* Is Distinguishable Because The BCNR *Agreed* With Plaintiff, And Because Plaintiff *Was* Able To Serve During The Period For Which He Sought Back-Pay

*Egan* is easily distinguishable, and inapposite, for multiple reasons. In *Egan*, the correction board *agreed* that plaintiff was in fact fit to serve on the date he had been discharged as unfit, as well as during the entire period for which plaintiff sought back-pay. Mr. Egan was discharged from active duty in the Marine Corps on April 11, 1944, on the erroneous assumption that he was unfit due to a mental disorder, when in fact he was a "perfectly healthy and normal man." *Egan*, 141 Ct. Cl. at 3-9. The mistaken belief that Mr. Egan has a mental disorder resulted from "an unusual case of mistaken identity and almost incredible negligence." *Id*. at 3. Mr. Egan petitioned the Board for Correction of Naval Records (BCNR) for relief in December 1947. *Id*. at 9. The BCNR believed his account and found that he had never been insane and had at all times been capable of performing his duties in the Marine Corps. *Id*. at 10. For those reasons, the BCNR concluded that Mr. Egan's discharge should be changed to "honorable," with

no reference to mental incapacity. *Id*. This decision was approved by the Secretary of the Navy on March 17, 1948. *Id*. Accordingly, the Commandant of the Marine Corps ordered this change to Mr. Egan's records — but "for some unknown reason," the new honorable discharge was made effective on April 11, 1944, the date of the original void discharge. *Id*. at 11.

In 1951, Congress enacted Public Law 220, which authorized administrative payment of claims for lost pay. *Id*. at 12. In March 1955, Mr. Egan petitioned the BCNR for back pay. *Id*. The BCNR denied Mr. Egan's request on March 14, 1956, without providing any explanation. *Id*. The 1956 BCNR decision "appear[ed] . . . to have been rendered on the mistaken assumption that plaintiff was seeking a further correction of his naval records." *Id*. at 13. The Court awarded back pay to April 7, 1948. *Id*. at 19.

*Egan* is readily distinguishable from the present case. *Egan* involved a made-for-Hollywood tale in which a combination of lost records and lying witnesses led Army physicians to diagnose Mr. Egan as insane when he was not — and then later rely on his understandable frustration and protests as purported evidence supporting the false diagnosis. *See id*. at 3-10. Eventually Mr. Egan was able to bring the truth to light, and the BCNR and Secretary of the Navy *agreed* with him that he had been fit at the time he was discharged for purported unfitness. *Id*. at 10. This rendered his 1944 discharge for unfitness void.

Here, in contrast, the AFBCMR did *not* find that Mr. Brenner had been fully capable of performing his duties at the time he was discharged. Rather, the AFBCMR determined that Mr. Brenner's discharge was proper because he had an "unsuiting" mental health condition that existed prior to service. AR 1360-61. This decision was supported by substantial evidence, as we explained in our opening brief. ECF No. 53 at 22-24.

- 9 -

Further, in *Egan*, the BCNR had found that Mr. Egan had "at all times been mentally and physically capable of performing active service as an officer in the Marine Corps," apparently up to the date of the BCNR's 1948 decision.  *See Egan*, 141 Ct. Cl. at 10.  This makes the Court's decision to award back pay up to 1948 consistent with the principle that back pay is appropriate *only* for a period in which the servicemember was "ready, willing, and able" to serve.  *Anderson v. United States*, 59 Fed. Cl. 451, 458 (2004) (citing *Groves v. United States*, 47 F.3d 1140, 1147 (Fed. Cir. 1995)); *Graves v. United States*, 176 Ct. Cl. 68, 76 (1966); *Lyon v. United States*, 161 Fed. Cl. 88, 97 (2022); *Grooms v. United States*, 113 Fed. Cl. 651, 662 (2013).  As we explained in our opening brief, ECF No. 53 at 19-21, Mr. Brenner does not even allege that he was "ready, willing, and able" to serve during the period for which he seeks back pay.  Rather, he alleges facts that, if true, would prove hi*s inability* to serve during the five-year period after separation. *See* Complaint, ¶¶ 37-38, 63, 67, 84, 121-26.  There is also ample record evidence that Mr. Brenner was unable to serve during the post-separation period.  ECF No. 53 at 20-21.

Further, as discussed above, the DRB's 2016 statement that Mr. Brenner "did not have a personality disorder or any other mental health issues" was inconsistent with its maintenance of the bar to reenlistment at that time, *see* AR 245, was disavowed and explained by the DRB itself in 2020, AR 97-98, and is not binding on the AFBCMR in any event.

B.    *Russell* Is Distinguishable And Inapposite For Many Reasons

*Russell* is distinguishable, and inapposite, for several reasons.  On May 26, 1960, Mr. Russell was discharged from the Air Force as "unsuitable" due to a long history of extreme anxiety and emotional instability.  *Russell*, 183 Ct. Cl. at 806, 808.  The Air Force had failed to refer Mr. Russell for evaluation by a psychiatrist before discharging him, which was required by regulation at the time.  *See id*. at 808-09.  Mr. Russell sought a medical retirement from the

Court, and that claim had never been evaluated by the Air Force.  *Id*. at 810.  The Court determined that Mr. Russell was improperly discharged in 1960 (because he had not been evaluated by a psychiatrist), but did not decide what relief, if any, was warranted.  *Id*. at 821-22.

The Court held a "full trial" for factfinding on the question of whether Mr. Russell was entitled to disability retirement.  *Id*. at 810.  The Government did not object before, during, or shortly after the trial that this question had to be considered by a proper military tribunal, rather than the Court.  *Id*.  The Court determined that the Government had waived the issue.  *Id*. at 810-11.  The Court remanded the case to the trial commissioner to determine the issue based on the record developed at the trial.  *Id*. at 811.

*Russell* is distinguishable, and inapposite, for several reasons.  First, the only thing *Russell* decided was that a regulation had been violated because Mr. Russell had not been examined by a psychiatrist before his discharge.  The Court did not decide whether the violation was harmful, and what relief, if any, was warranted.  We are unaware of a comparable regulatory violation in this case.  Mr. Brenner has not identified one.  Neither was the DRB aware of one, when it advised the AFBCMR in 2020.  AR 98 ("no further inequity or impropriety can be found in his record").  Unlike Mr. Russell, Mr. Brenner was thoroughly examined by a psychologist before his discharge.  A clinical psychologist, Maj. Mikel Merritt, conducted a clinical interview, psychological testing, and a review of Mr. Brenner's medical record, during March 26, 27, and 31, 2014.  AR 69; AR 41.  On March 31, 2014, Maj. Merritt diagnosed Mr. Brenner with Cluster A personality disorder, which in Maj. Merritt's opinion, made Mr. Brenner unsuitable for military service.  AR 69-70.  This was consistent with AFI 36-3208.  Per that instruction, a discharge for personality disorder must be supported by a report of evaluation by a psychiatrist or PhD-level clinical psychologist, confirming the diagnosis as contained in the current edition of

- 11 -

the Diagnostics and Statistical Manual of Mental Disorders (DSM), and stating that "the disorder is so severe the member's ability to function effectively in the military environment is significantly impaired." AFI 36-3208, § 5.11.9, Appx74.

Maj. Merritt is a PhD level clinical psychologist. AR 71. Maj Merritt's evaluation considered Axis I-V of the DSM IV to confirm the diagnosis. AR 70. Maj Merritt addressed the significant impairment, writing: "[t]he results of this evaluation suggest that A1C [Airman First Class] Brenner's diagnosis of Personality Disorder NOS, with Cluster A features is so severe that his ability to function effectively in the military environment is significantly impaired. This evaluation would support administrative separation per AFI 36-3208, Chaptr 5, section 5.11.9." AR 71. Thus, here, unlike in *Russell*, the Air Force complied with instructions.

Second, the *Russell* Court did not decide that Mr. Russell was entitled to back pay, or consider whether a possible claim for back pay was precluded by Mr. Russell's inability to serve. The Court opined in dicta that the plaintiff "could, if he wished, seek active duty pay (until the expiration of his enlistment in February 1962)" — which the plaintiff was not seeking. *Russell*, 183 Ct. Cl. at 809. The Court did not consider whether Mr. Russell was "ready, willing, and able" to serve during the period between his discharge and the end of his enlistment. As we discussed above and in our cross-motion, being "ready, willing, and able" to serve is a requirement of a back pay claim. Mr. Russell's claim for a medical retirement was premised on his *inability* to serve during that period, so it would have been inconsistent with that claim for Mr. Russell to have sought back pay as well.

Third, in *Russell*, the Air Force had not evaluated Mr. Russell for medical retirement. It is well established that the military must decide this issue in the first instance, and that the AFBCMR may do so. *Friedman v. United States*, 310 F.2d 381, 392, 396 (Ct. Cl. 1962); *see*

*also Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed. Cir. 1991); *Strahler v. United States*, 158 Fed. Cl. 584, 596 (2022). The only reason the *Russell* Court allowed a trial for factfinding on that issue was the Court's apparent unawareness of this rule, and the failure of the Government to raise it timely. Here, the AFBCMR *has* evaluated whether Mr. Brenner was entitled to a medical retirement, and determined he was not. The Court must now review that determination under the deferential "substantial evidence" standard, not hold a trial for *de novo* factual findings. *E.g.*, *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). The AFBCMR's decision is supported by substantial evidence, as we explained in our opening brief. ECF No. 53 at 33-38. Thus, the Court should affirm the AFBCMR's decision.

V.      <u>We Are Unaware Of A Similar Case In Which A Court Granted Relief</u>

The Court has asked if this Court or a United States District Court has deemed a discharge void or improper in circumstances similar or analogous to this case. ECF No. 60. We are unaware of such a case.

Mr. Brenner cites several inapposite cases. First, he cites *Williams v. Roth*, No. 8:21-CV-02135-PX, 2022 WL 4134316 (D. Md. Sept. 12, 2022). Supp. Br. 9-10.

In *Williams*, "[t]he Court [took] no position on the merits of Williams' arguments." *Id*. at *8. It remanded the case to the correction board because the board had not considered all of Williams' arguments and evidence. *Id*. at *6-8. Here, the only argument that the board has not considered is the one about Mr. Brenner's uniform. Mr. Brenner did not present this claim to the board, resulting in waiver. USA Mot. 41-42.

Second, Mr. Brenner cites *Betts v. United States*, 145 Ct. Cl. 530 (1959). Supp. Br. 9-10. In *Betts*, the correction board *agreed* with Mr. Betts that he should have been medically retired. *Id*. at 534. The Assistant Secretary of the Army denied relief, and returned the case for further

consideration by the board.  *Id.*  The correction board then reversed its position, with one member dissenting.  *Id.* at 535.  The Court found that the Assistant Secretary of the Army's decision was "contrary to all the evidence," and thus "capricious."  *Id.*  This case is not on point. Here, unlike in *Betts*, the AFBCMR's decision *is* supported by substantial evidence, as we explained in our prior briefing.  ECF No. 53 at 33-38.

Third, Mr. Brenner cites *Lowry v. United States*, 153 Fed. Cl. 300 (2021), *order vacated in part*, No. 20-682C, 2021 WL 4888874 (Fed. Cl. Oct. 19, 2021).  Supp. Br. 9.  Mr. Lowry was separated for misconduct with more than 19 years of service in the Navy, just shy of the 20 years needed for retirement.  *Id.* at 303, 308.  He opposed the separation, and testified at his separation hearing.  *Id.* at 308.  His service was characterized as "under honorable conditions (general)," rather than "honorable."  *Id.* at 310, 312.  "[T]he Navy's decision to separate Mr. Lowry was based in substantial part (if not entirely) upon his failure to disclose his DUIs [convictions for driving under the influence of alcohol] to his command."  *Id.* at 315.  However,

> the notice of separation that the Navy provided to Mr. Lowry did not charge him with that offense. It did not cite the Navy regulations requiring such disclosure or provide any description of the facts showing a failure to disclose.  To the contrary, the administrative separation board notice stated that Mr. Lowry would be processed for separation for committing the "serious offense" of "multiple DUIs."

*Id.* at 315-16.  Further, the first time the Navy began considering failure to disclose DUIs as a basis for separation was "<u>after</u> Mr. Lowry had already put on his case and <u>after</u> the separation board had already made its recommendation" to discharge him.  *Id.* at 316 (emphasis in original). Thus, Mr. Lowry did not try to explain his failure to report his DUIs to the separation board.  *Id.* The Court found that the error was not harmless.  *See id.*

- 14 -

*Lowry* is dissimilar from the present case.  Mr. Lowry was charged with one form of misconduct, and testified in his defense at a separation hearing — only for the Navy to later rely on a different form of misconduct to justify his discharge.  *See id.*  Here, Mr. Brenner was not charged with misconduct, had no right to a hearing, was guaranteed (and received) an honorable discharge, and agreed with the proposed discharge.  AR 52 (recommending "honorable" characterization); AR 57 ("I do request Honorable discharge.").  Further, Mr. Brenner has not argued that the first label given to his preexisting mental condition affected his decision to agree with the proposed discharge, let alone the ultimate separation decision.  *Lowry* is inapposite.

Finally, Mr. Brenner cites *Doyon v. United States*, 58 F.4th 1235 (2023).  *Doyon* involved the Defense Department's "liberal consideration" policy, and a related statute, 10 U.S.C. § 1552(h).  *See id.*  "Liberal consideration" can apply only in cases involving post-traumatic stress disorder, traumatic brain injury, or sexual assault / harassment.  *See Doyon*, 58 F.4th at 1238; 10 U.S.C. § 1552(h).  Mr. Brenner does not claim to have had any of these conditions or experiences.  *Doyon* is irrelevant.

Thus, Mr. Brenner has not identified a similar or analogous case in which a court found a discharge void or improper.  It appears, then, that the relief Mr. Brenner seeks is without precedent.  His claim is also contradicted by the "ready, willing, and able" rule, discussed above, an independent basis for rejecting it, aside from the harmlessness of the alleged error.

## CONCLUSION

For these reasons and the reasons given in our prior briefs, we respectfully request the Court to dismiss the complaint.  If any claims survive our motion to dismiss, we respectfully request that the Court grant our cross-motion for judgment on the administrative record, and deny Mr. Brenner's motion for judgment on the administrative record.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

 /s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

OF COUNSEL:

                                             /s/ Joshua A. Mandlebaum
AARON E. ALLARD                              JOSHUA A. MANDLEBAUM
Litigation Attorney                          Senior Trial Counsel
Military Personnel Law and Litigation Branch Commercial Litigation Branch
The Judge Advocate General's Corps           U.S. Department of Justice
Department of the Air Force                  Civil Division
Joint Base Andrews, Maryland                 P.O. Box 480
                                             Ben Franklin Station
                                             Washington, D.C. 20044
                                             Tel:  (202) 532-5409
                                             joshua.a.mandlebaum@usdoj.gov

December 22, 2025                            Attorneys for Defendant